IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARL McBEE,                              )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )
                                         )   Civil Action No. 15-263-J
CAROLYN W. COLVIN,                       )
ACTING COMMISSIONER OF                   )
SOCIAL SECURITY,                         )
                                         )
            Defendant.                   )

O R D E R

AND NOW, this 23rd day of March, 2017, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Acting Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401, et seq., finds that the Acting Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the

evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] The Court finds no merit in Plaintiff's various arguments that the Administrative Law Judge ("ALJ") erred in his analysis at Steps Two and Five of the sequential evaluation process, and concludes that substantial evidence supports the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act.

Plaintiff first asserts that the ALJ erred in finding that his history of transient ischemic attack ("TIA") and anxiety do not constitute severe impairments at Step Two of the sequential evaluation process. However, Plaintiff fails to acknowledge that the Step Two determination as to whether he is suffering from a severe impairment is a threshold analysis requiring the showing of only one severe impairment. See Bradley v. Barnhart, 175 Fed. Appx. 87, 90 (7th Cir. 2006). In other words, as long as a claim is not denied at Step Two, it is not generally necessary for the ALJ specifically to have found any additional alleged impairment to be severe. See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007); Lee v. Astrue, 2007 WL 1101281, at *3 n.5 (E.D. Pa. Apr. 12, 2007); Lyons v. Barnhart, 2006 WL 1073076, at *3 (W.D. Pa. Mar. 27, 2006). Since the ALJ found that Plaintiff had a number of severe impairments and his claim was not denied at Step Two, it does not matter whether the ALJ correctly or incorrectly found Plaintiff's TIA and anxiety to be non-severe.

Nevertheless, the ALJ did not err in concluding that Plaintiff's TIA and anxiety are not severe impairments. The Social Security Regulations and Rulings, and case law applying them, discuss the Step Two severity determination in terms of what is "not severe." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003) (citing Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)). According to the Regulations, an impairment "is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Although the burden on an applicant at Step Two is not an exacting one, Plaintiff nonetheless bears the burden to prove that his claimed impairments are severe. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (stating that the claimant bears the burden of proof at Step Two of the sequential evaluation process). Plaintiff has not met that burden in this case, as he has not proffered evidence to establish that TIA and anxiety significantly limit his ability to perform basic work activities.

Plaintiff's severity argument is undermined by the fact that he completed a disability report on which he indicated that ankle and wrist injuries, arthritis, neuropathy, back problems and injuries to both feet limit his ability to work, not TIA and anxiety as he now claims. (R. 201). In addition, as the ALJ noted, the record contains no significant evidence regarding TIA or anxiety, other than one hospital treatment report which listed those conditions in Plaintiff's past medical history. (R. 31, 455). However, the report explained that there was no evidence suggestive of ischemia at that time and did not further elaborate on anxiety. (R. 456). The only other pieces of evidence in the record pertinent to either condition are several treatment notes indicating that Plaintiff's mental status was normal upon examination. (R. 248, 291, 294). As the ALJ correctly observed, the record does not document limitations resulting from TIA or

2

anxiety which significantly impact Plaintiff's ability to perform basic work activities. (R. 31). Accordingly, there is no basis for Plaintiff's argument regarding the ALJ's analysis at Step Two.

Next, Plaintiff's numerous arguments challenging the ALJ's residual functional capacity ("RFC") assessment and finding at Step Five of the sequential analysis as not being supported by substantial evidence also are without merit.

As an initial matter, Plaintiff is incorrect in arguing that the ALJ failed to consider his severe and non-severe impairments in combination in assessing his RFC. As already discussed, the ALJ properly found that TIA and anxiety were not severe impairments, and the record does not document any resulting limitations from those impairments. The ALJ otherwise adequately considered in combination all credibly established limitations resulting from Plaintiff's severe impairments in fashioning a comprehensive RFC. (R. 32-36).

Plaintiff's claim that the ALJ failed to consider the effect of his obesity in assessing his RFC is equally unfounded. In Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005), the Third Circuit held that an ALJ's failure to mention the claimant's obesity does not require a remand where the claimant did not expressly rely on obesity as a basis for establishing functional limitations during the administrative proceedings and where he only generally asserted that his obesity makes basic activities more difficult. As in Rutherford, here, Plaintiff did not identify obesity as an impairment which limits his ability to work. (R. 201). Although Plaintiff reported at the administrative hearing that he gained 80 pounds over the prior year (R. 51), Plaintiff has never claimed, nor does the medical evidence of record indicate, that he experiences functional limitations because of his weight. Plaintiff offers no suggestion as to what functional limitations should have been included in the RFC to account for his obesity, and there is no evidence to indicate that obesity combined with Plaintiff's other impairments would somehow impact his RFC. As such, Plaintiff offers only the generalized assertion that his weight could have had an impact on his RFC, an argument which was rejected by the Third Circuit in Rutherford. See 399 F.3d at 553.

Plaintiff also is incorrect in arguing that the ALJ erred in weighing the medical opinion evidence because he did not give controlling weight to the opinion of Dr. Ryan Jander, who treated Plaintiff's right wrist problems, but he gave significant probative weight to the opinion of the state agency physician and some probative weight to a functional capacity evaluation completed by a physical therapist.

The Court finds that the ALJ provided adequate explanation for his finding that Dr. Jander's opinion on a Physical Residual Functional Capacity Questionnaire indicating that Plaintiff had limitations exceeding the RFC assessment was not entitled to controlling weight, despite the fact that Dr. Jander was one of Plaintiff's treating physicians. (R. 36-37, 445-48). It is true that when assessing a claimant's application for benefits, the opinion of the claimant's treating physician generally is to be afforded significant weight. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). In fact, the Regulations provide that a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. As a result, the ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the ALJ's own judgment or speculation, although he "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 429.

Here, the ALJ included in his decision a thorough discussion as to why Dr. Jander's opinion was not entitled to controlling weight. As the ALJ explained, Dr. Jander's opinion of Plaintiff's right wrist limitations set forth on the Questionnaire was inconsistent with his own treatment records and other objective findings in the record, as well as with Plaintiff's self-reported activities of daily living. (R. 36-37). Notably, Dr. Jander's treatment records do not provide support for the lifting limitations he identified on the Questionnaire or for his prediction that Plaintiff may miss work more than four days per month. (R. 446, 448). Following two surgeries on Plaintiff's right wrist, (R. 329, 348), Dr. Jander's records show that although Plaintiff continued to experience some pain, his hand was "tremendously better," and he had comfortable or functional range of motion. (R. 296, 304, 306, 310, 311, 313, 342, 344, 345, 507). Dr. Jander even commented that Plaintiff was "not preclude[d] from pursuing work through vocational rehabilitation." (R. 297).

Dr. Jander's opinion also was inconsistent with the opinion of the state agency physician, which the ALJ concluded was entitled to significant probative weight because it was supported by the medical evidence of record. (R. 36). Plaintiff disagrees with the ALJ's decision to afford weight to this opinion because the state agency physician only reviewed Plaintiff's records and did not examine him. Although, in general, "the opinions of a doctor who has never examined a patient have less probative force as a general matter, than they would have had if the doctor had treated or examined him," Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (internal quotations omitted), where "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit." Id. at 317. Of course, the ALJ "'cannot reject evidence for no reason or for the wrong reason,'" Id. (quoting Plummer, 186 F.3d at 429), and can only give the opinion of a non-treating, non-examining physician weight insofar as it is supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation provided for the opinion. See SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). In certain cases, it would not be unwarranted to give more weight to the non-examining professional's opinion. The record here establishes that the ALJ certainly could give more weight to the opinion of the state agency physician than to that of Dr. Jander. Regardless, the ALJ's decision does not hinge solely on the state agency physician's opinion, but rather relies on the objective medical evidence as a whole. (R. 33-36). See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361-62 (3d Cir. 2011) (finding that the ALJ properly relied on the state agency medical consultant's RFC assessment in support of his decision to deny the claimant's application for benefits, noting that the ALJ did not merely rubber stamp the medical consultant's RFC determination, but rather considered the evidence as a whole). Accordingly, the ALJ did not err in his treatment of the state agency physician's opinion.

4

Likewise, the ALJ properly considered and gave some probative weight to a functional capacity evaluation by a physical therapist, (R. 36, 276-85), despite Plaintiff's complaint that a physical therapist is not an acceptable medical source who is qualified to comment on his physical capabilities. In assessing opinion evidence, the ALJ may consider evidence about a claimant's impairments and ability to work from other medical sources who are not deemed "acceptable medical sources," such as therapists, nurse practitioners, physicians' assistants, chiropractors and audiologists. 20 C.F.R. § 404.1513(d)(1). SSR 06-03p clarifies how opinions from these other medical sources should be considered, explaining that they may provide insight into the severity of an impairment and how it affects an individual's ability to function. See SSR 06–03p, 2006 WL 2329939, at *1, *2 (Aug. 9, 2006). When evaluating such evidence, the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a . . . subsequent reviewer to follow the [ALJ's] reasoning . . . ." Id. at *6. Here, the ALJ considered the functional capacity evaluation by the physical therapist and explained that it was entitled to some probative weight because it was consistent with and supported by the medical evidence of record. (R. 36). The ALJ's discussion of this other medical source opinion was sufficient to allow the Court to review the ALJ's decision and conclude that it was proper.

There also is no merit to Plaintiff's assertion that the ALJ failed to fully develop the record because he did not request a consultative examination to evaluate Plaintiff's anxiety and problems with his feet. As the Third Circuit has explained, an ALJ's duty to develop a full and fair record "is most acute where the claimant is unrepresented," Turby v. Barnhart, 54 Fed. Appx. 118, 122 (3d Cir. 2002) (citing Livingston v. Califano, 614 F.2d 342, 345 (3d Cir. 1980)), and here Plaintiff was represented by counsel. (R. 46). Accordingly, Plaintiff's counsel could have proffered any evidence he wished to submit to establish the functional limitations resulting from Plaintiff's claimed impairments. See 20 C.F.R. § 404.1740(b)(1) (stating that a claimant's representative must help obtain the information and evidence that the claimant must submit for consideration of his claim). Regardless, the ALJ had no basis upon which to further inquire concerning anxiety because, as already discussed, the ALJ properly found Plaintiff's anxiety does not constitute a severe impairment. Further, no additional inquiry was required concerning Plaintiff's problems with his feet because the ALJ accounted for any resulting limitations by including in the RFC assessment a sit/stand option and a restriction for only occasional postural maneuvers and no climbing of ladders, ropes and scaffolds. (R. 32).

Plaintiff's challenge to the ALJ's evaluation of his credibility also lacks merit. Plaintiff's primary contention is that the ALJ's analysis failed to consider properly what Plaintiff characterizes as his limited participation in activities of daily living. While it is well established that "sporadic or transitory activity does not disprove disability," Smith v. Califano, 637 F.2d 968, 971-72 (3d Cir. 1981), Plaintiff's daily activities did not qualify as such. Those activities included Plaintiff caring for his own personal needs, managing personal finances, preparing simple meals, assisting with household tasks, driving, going outside on a daily basis, practicing target shooting, visiting with friends, using a computer, reading and watching television, (R. 50-51, 59, 64-67, 211-213), which, as the ALJ observed, demonstrated a level of activity incompatible with Plaintiff's allegation of total disability. Nonetheless, the ALJ did not judge

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 10) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED.

                                                s/ Alan N. Bloch
                                                United States District Judge

ecf:        Counsel of record

---

Plaintiff's credibility based solely on his activities of daily living. Rather, the ALJ properly considered Plaintiff's activities of daily living, as well as the objective medical evidence, the extent of Plaintiff's treatment, his own statements about his symptoms and opinions by treating and reviewing physicians, (R. 33-36), which the ALJ is permitted to do in accordance with 20 C.F.R. §§ 404.1529(c)(1) and (c)(3). Accordingly, the ALJ's credibility finding is supported by substantial evidence.

      Plaintiff's final argument is that the ALJ improperly relied upon vocational expert testimony in response to an incomplete hypothetical question. As discussed supra, the RFC assessment accounted for all of Plaintiff's credibly established limitations, and the ALJ incorporated the comprehensive RFC into the hypothetical question posed to the vocational expert. As such, the hypothetical question was proper because it must convey to the vocational expert all of the claimant's impairments and limitations supported by the medical evidence, which it did here. See Rutherford, 399 F.3d at 554 (explaining that the ALJ "must accurately convey to the vocational expert all of a claimant's credibly established limitations"). Therefore, the ALJ did not err in relying on the vocational expert's testimony to conclude that Plaintiff can perform work that exists in significant numbers in the national economy and thus is not disabled.

      Accordingly, for all of the reasons stated herein, the Court affirms the ALJ's decision.